HEFNER, STARK & MAROIS, LLP
Howard S. Nevins (CA Bar Assn. No. 119366)
Aaron A. Avery (CA Bar Assn. No. 245448)
2150 River Plaza Drive, Suite 450
Sacramento, CA 95833-3883
Telephone: (916) 925-6620
Fax No: (916) 925-1127
Email: hnevins@hsmlaw.com

Attorneys for
KIMBERLY J. HUSTED,
Chapter 7 Trustee

# UNITED STATES BANKRUPTCY COURT
## EASTERN OF CALIFORNIA
### (Sacramento Division)

| | |
|---|---|
| In re<br><br>GRANITE BAY INVESTMENT PARTNERS, LLC,<br><br>Debtor. | Case No.: 13-29661-C-7<br>DC No.: HSM-004<br>Date: March 11, 2014<br>Time: 9:30 a.m.<br>Place: 501 I Street<br>Sacramento, CA<br>Ctrm. 35, 6th Flr.<br>Judge: Christopher M. Klein |

**TRUSTEE'S MOTION FOR APPROVAL OF SALE OF REAL PROPERTY
(1533 & 1535 ORLANDO WAY) FREE AND CLEAR OF LIENS
AND ENCUMBRANCES, AND TO PAY EXPENSES OF SALE,
INCLUDING COMMISSION TO REAL ESTATE AGENT**

KIMBERLY J. HUSTED, the duly appointed Chapter 7 Trustee ("Trustee") in the pending bankruptcy case of GRANITE BAY INVESTMENT PARTNERS, LLC (the "Debtor"), Case No. 13-29661-C-7, files this Trustee's Motion for Approval of Sale of Real Property 1533 & 1535 Orlando Way) Free and Clear of Liens and Encumbrances and to Pay Expenses of Sale, Including Commission to Real Estate Agent ("Motion") as follows:

1. This case was filed as an involuntary Chapter 7 case on July 23, 2013. An order for relief was thereafter entered and the Trustee was appointed as Chapter 7 Trustee on September 26, 2013. The Trustee continues to serve in that capacity.

2. Jurisdiction for the filing of this Motion exists pursuant to 28 U.S.C. §§ 157 and

1334; 11 U.S.C. §§ 363(b), 363(f) and 503(b); and the reference to this Court by the District Court for the Eastern District of California.

### Introduction and Relief Requested

3. One of the assets of the Estate, and the property that is the subject of this Motion, consists of the Estate's right, title, and interest in and to that certain real property commonly known as 1533 & 1535 Orlando Way, Sacramento, CA 95815, APN 266-0413-014 (the "Property"). The Property was listed on Debtor's Schedules A and D filed in this case on October 28, 2013, with an estimated value of $150,000.00.

4. After the Trustee's appointment in this case, and based on her investigation of the Property, the Trustee elected to retain Reed Block Realty, a real estate brokerage firm ("Firm"), and specifically Reed Block, as her real estate agent (collectively "Agent"). An application requesting Court approval of the employment of the Broker/Agent on behalf of the Estate was filed on January 10, 2014, and the employment was approved by this Court on January 15, 2014.

5. Pursuant to the efforts of the Agent, the Trustee has received and accepted an offer to purchase the Property from Kevin Reynolds and Patcharin Reynolds (collectively "Buyer"), subject to Court approval and overbidding. The terms of the proposed offer to purchase the Property are summarized in the description of the Purchase Agreement described below.

6. This Motion seeks approval from the Court for (i) the Trustee's entry of the Purchase Agreement and sale of the Property pursuant to the terms thereof,(ii) sale of the Property free and clear of the Attachment, Lis Pendens, and the Mechanic's Lien (if the Trustee is unable to obtain voluntary removal of these liens); (iii) payment of the commission to Agent consistent with the approved listing agreement, if the proposed sale is approved and consummated with the proposed Buyer or any successful Qualified Overbidder (as described in the overbidding process below), and **(iv)** payment of other customary expenses of closing associated with this sale.

///

**Purchase Agreement**

7. Buyer's offer to purchase has been accepted by the Trustee, as Seller, through the mutual execution of that certain California Residential Purchase Agreement and Joint Escrow Instructions and Counter Offer No.1 thereto dated as of January 23, 2014, and the First Amendment thereto dated as of February 3, 2014 (collectively, the "Purchase Agreement"). A true and correct copy of the Purchase Agreement is attached as Exhibit "A" to the Exhibits Cover Sheet filed and served with this Motion.

8. The material terms of the Purchase Agreement are as follows:

    a. The Purchase Price for the Property is $114,000.00 ("Purchase Price" or "Sales Proceeds");

    b. Buyer has deposited the sum of $10,000.00 (the "Deposit") into escrow. The Deposit is creditable against the Purchase Price and is non-refundable after satisfaction of all of Buyer's conditions to closing, subject to Seller obtaining Court approval of this Agreement. If Buyer fails to close the purchase due to default by Buyer, the Deposit shall be non-refundable and shall be retained by the Trustee as liquidated damages for such breach;

    c. The proposed sale of the Property and the Purchase Agreement are subject to Bankruptcy Court approval through the granting of this Motion;

    d. Buyer will pay the Purchase Price and close escrow on or before the later of 30 days from acceptance, 3 days after expiration of the contingency periods, or 15 days after the filing of the Court's order approving this Motion (the "Closing Date").

    e. The following closing costs will be allocated to the Estate and paid from the Sales Proceeds: (i) one-half the cost of the escrow fee; (ii) the premium for the standard coverage title insurance policy; (iii) the costs to prepare and record the grant deed and other costs related thereto, including the documentary transfer tax; (iv) the prorated share of real property taxes and assessments secured against the Property (including the costs to cure any delinquencies related thereto) and rents and utilities related to the Property; and (v) any amounts required to be withheld for state or federal taxes. The portion of the Sales Proceeds remaining after deduction of the foregoing costs allocable to the Estate as Seller, and after

HEFNER, STARK & MAROIS, LLP
Sacramento, California

payment of the commission to the Agent as approved by the Court, shall be referred to herein as the "Net Sales Proceeds;"

  f. Buyer will acquire the Property in its "AS IS," "WHERE IS," "WITH ALL FAULTS" condition. Trustee is making no representations or warranties, directly or indirectly, with respect to the condition or history of the Property and has no duty to inquire or investigate or provide any disclosures related to the Property. Buyer shall rely solely on its own investigation of the Property in the decision to acquire the Property;

  g. Title to the Property shall be subject to all liens or encumbrances for real property taxes and/or assessments which are not delinquent as of the close of escrow. As discussed below, title to the Property appears to be subject to a lien created by the recordation of a Writ of Attachment and related Lis Pendens (Ms. Conley) and a lien arising from the recordation of a Mechanics Lien (CEJA). As set forth in detail below, the Trustee is requesting authority from the Court to sell the Property free and clear of the Attachment, Lis Pendens and Mechanics Lien pursuant to 11 U.S.C. § 363(f)(4).

  h. Trustee is not aware of any other secured interests against the Property. If any other monetary liens are discovered to exist against the Property, delivery of title free and clear from such other monetary liens may require the cooperation and consent of any lien holders. The Purchase Agreement allows that, if any other such secured creditor's consent cannot be obtained at least seven (7) days before the hearing date on this Motion, then the Trustee may request extension(s) of the hearing date for up to thirty (30) days and if the Trustee is still unable to obtain such consent, Buyer's sole recourse will be to either assume the lien, without adjustment to the Purchase Price, or terminate the Agreement and receive the refund of the Buyer's deposit.

  i. With respect to the improvements and any fixtures located on the Property in which this bankruptcy Estate owns any interest therein, this Motion seeks authority to sell and transfer to the Buyer the Estate's interest in such assets as part of the Property;

  j. Buyer's obligation to purchase the Property is contingent upon Buyer's review and approval of title to the Property and approval of the condition of the Property within

a 17-day due diligence period from the date of full execution of the Purchase Agreement;

        k.    Buyer's obligation to purchase the Property is also contingent upon Buyer obtaining $85,500.00 of lender financing towards the payment of the Purchase Price. Buyer is obligated to notify the Trustee of Buyer's satisfaction or waiver of this contingency within the 17-day due diligence period;

        l.    The Trustee, on behalf of the Estate, will cause this Motion and all papers related thereto to be filed for a hearing on this Motion as soon as possible; and

        m.    The proposed sale to Buyer is subject to overbidding at the hearing on this Motion. If no overbids for the Property are made at the hearing on this Motion, or if the Buyer is the highest bidder for the Property at the hearing on the Motion, the Deposit shall be applied to the Purchase Price or the highest price bid by Buyer at the hearing on the Motion, whichever is greater. If a Qualified Overbidder outbids Buyer, Buyer shall remain obligated to buy the Property at the Purchase Price or its highest bid, if the overbidder fails to close and Buyer is the next highest bidder on the Property. If a Qualified Overbidder outbids Buyer and closes its purchase of the Property, then the Purchase Agreement shall terminate and the Deposit shall be returned to Buyer.

### Sale Free and Clear of Attachment, Lis Pendens and Mechanics Lien

9.    Based upon the Trustee's review of the Debtors' Schedules, a preliminary title report for the Property and recorded liens and encumbrances provided by the title company, the only recorded liens and encumbrances that appear to encumber the Property are the following:

        a.    the liens for delinquent taxes, assessments and utilities, which the Trustee proposes be paid from the proceeds of the sale;

        b.    the Attachment and the related Lis Pendens recorded by Ms. Conley; and

        c.    the Mechanics Lien in favor of CEJA.

12.    Pursuant to 11 U.S.C. § 363(f), the Trustee may sell property of the estate: "free and clear of any interest in such property of an entity other than the estate, if . . . (2) such entity consents; . . . [or] (4) such interest is in bona fide dispute[.]" To satisfy the conditions of

the Purchase Agreement, the proposed sale of the Property must be free and clear of interests, including liens and encumbrances, pursuant to 11 U.S.C. § 363(f).

10.     The Debtor's Schedule D also discloses a state court Writ of Attachment recorded against the Property on or around June 3, 2013, in the amount of $300,000.00 (the "Attachment"), in favor of Cameron Conley ("Ms. Conley"). A preliminary title report for the Property reflects the date of recordation of the Attachment as June 28, 2013, and also discloses the recordation of a notice of pendency of action on June 21, 2013 in the ancillary superior court case (the "Lis Pendens"). With this bankruptcy case being filed on July 23, 2013, the Attachment was recorded 25 days and the related Lis Pendens was recorded 32 days prior to the filing of this case.

11.     Through her counsel Michael Mahon, Ms. Conley has acknowledged to the Trustee's counsel the Trustee's right to avoid both the Attachment and Lis Pendens, and has further indicated that she will execute releases of these encumbrances to support the sale of the Property. The Trustee is preparing such releases for Ms. Conley's review and approval and anticipates having those documents recorded before the hearing on this Motion. Until such time, however, the Trustee asserts that the Attachment and Lis Pendens are in bona fide dispute pursuant to section 363(f)(4) of the Bankruptcy Code, and therefore, that the sale proposed herein may be approved by this Court free and clear of Ms. Conley's liens / encumbrances with same attaching to the proceeds of the sale in the same order and priority as exists at present and subject to whatever defenses may exist to the claims and/or liens and subject to any agreed-upon carve-outs and/or surcharges as may be ordered pursuant to 11 U.S.C. § 506(c).

12.     The preliminary title report also discloses the recordation of a mechanics lien against the Property on August 23, 2013, one month following the commencement of this bankruptcy case, in the amount of $6,025.00 (the "Mechanics Lien"), in favor of CEJA Construction Services, Inc. ("CEJA"). The preliminary title report does not evidence any subsequent filing by CEJA of a complaint to foreclose the lien, a required step under California law to perfect a mechanic's lien claimants' lien rights arising from a mechanic's lien. Nor does

the docket in this case evidence the filing of a Notice of Perfection of the Mechanics Lien by CEJA pursuant to section 546(b) of the Bankruptcy Code. As a result, the Trustee contends that the Mechanics Lien is avoidable. Until avoided, the Trustee asserts that the Mechanics Lien is in bona fide dispute pursuant to section 363(f)(4) of the Bankruptcy Code, and therefore, that the sale proposed herein may be approved by this Court free and clear of CEJA's Mechanics Lien with such lien attaching to the proceeds of the sale in the same order and priority as exists at present and subject to whatever defenses may exist to the claims and/or liens and subject to any agreed-upon carve-outs and/or surcharges as may be ordered pursuant to 11 U.S.C. § 506(c).

13. The Trustee intends to contact CEJA shortly with respect to the CEJA Mechanics Lien and is hopeful that this lien claim will be resolved prior to the hearing on the Motion as well.

13. The Trustee believes that the Purchase Price is a fair price for the Property, that the overbidding process will also protect creditors' interests for the estate to obtain the best price for the Property, and that since Ms. Conley's and CEJA's liens will attach to the Net Sales Proceeds until resolution of any defenses thereto, Ms. Conley and CEJA are likely to consent to the proposed sale in any event.

### Fair Price for Property

14. As set forth in its Schedule D filed October 28, 2013, the Debtor valued the Property at approximately $150,000.00. However, although the Purchase Price is less than Debtor's estimated value, based on the offers received on the Property through the Agent's efforts, the Trustee believes that the Purchase Price represents fair value to the Estate and represents a fair market value for the Property.

15. Furthermore, the Trustee has independently concluded, based on her investigation, that the Purchase Price of $114,000.00 appears to be a fair and reasonable price for the Property. This conclusion is based, in part, on the Trustee's review with the Agent of property values for similarly situated properties in the area and the condition of the existing improvements to the Property that are included within the Property, including the recent

damage to the Property caused by pipes that became frozen and burst within the vacant unit of the Property.

### Proposed Terms for Overbidding

16. The Trustee proposes that any persons or entities wishing to bid on the Property be required to first become a qualified overbidder (a "Qualified Overbidder") in the manner set forth below, prior to the commencement of the hearing on the Motion.

17. Any person or entity wishing to become a Qualified Overbidder must deliver to the Trustee a non-refundable deposit in the amount of $10,000.00 (the "Overbidder Deposit"), in the form of a cashier's check or money order made payable to Kimberly J. Husted, Chapter 7 Trustee of the Granite Bay Investment Partners, LLC Bankruptcy Estate," which will be applied to the purchase price for the Property if the Qualified Overbidder is the successful purchaser following the hearing on the Motion, and demonstrate to the Trustee the ability to close escrow within fifteen (15) calendar days of the Court's order approving this Motion. Such financial showing shall include, without limitation, either overbidder qualification for financing acceptable to Trustee and sufficient to pay the Purchase Price for the Property, or proof of the ability of the overbidder to fund payment of the Purchase Price in cash. The Overbidder Deposit and showing of financial ability to perform shall be delivered to the Trustee no later than two (2) business days prior to the date scheduled for the hearing on this Motion.

18. Prior to the hearing, a Qualified Overbidder may obtain permission from the Trustee to inspect the Property in order to investigate the Property and waive all contingencies to its purchase thereof, including property and title review and approval. Any such inspection shall be subject to the Qualified Overbidder (i) delivering the Deposit and showing of financial ability to perform as provided above and (ii) executing a form of Purchase and Sale Agreement on the same terms as Purchase Agreement entered into by Buyer. By submitting an overbid at the sale hearing, any Qualified Overbidder shall be deemed to have conclusively waived any and all contingencies to the purchase of the Property, except for Court approval of the sale to such Qualified Overbidder as the highest bidder thereon.

19. If a Qualified Overbidder is not successful at the hearing, the Overbidder Deposit

shall be returned to such Qualified Overbidder upon the entry of the order confirming the successful bidder for the Property. If a Qualified Overbidder is approved as the high bidder but fails to consummate the sale or otherwise breaches its covenants to the Trustee and the Estate, its Overbidder Deposit shall be retained and administered as an asset of the Estate.

20. The Trustee proposes that the initial overbid be $115,000.00 and subsequent overbids, if any, be in increments of $1,000. The high bidder must purchase the Property on terms identical to those set forth in the Purchase Agreement, subject to any modifications ordered by the Court, and with all contingencies to such purchase in the Purchase Agreement deemed waived by the bidder due to its election to participate in the auction thereon. If the Buyer is the high bidder, it shall pay the greater of its high bid or $114,000.00 for the Property. In the event a Qualified Overbidder outbids the Buyer, Buyer's offer to purchase the Property pursuant to the terms of the Purchase Agreement shall be maintained, for a period of 30 days after the conclusion of the hearing on this motion, as a back-up offer (with the Purchase Price based on the highest bid made by Buyer at the hearing on the Motion). Any such back-up offer shall become effective upon the overbidder's failure to close in accordance with the terms of the Purchase Agreement, as may be modified by the Court, so long as Buyer's Purchase Price is the next highest bid for the Property. In any event, the Purchase Agreement shall terminate and the Deposit shall be returned to Buyer upon close of escrow for the sale of the Property by any successful Qualified Overbidder.

## Authorization to Pay Commission to Agent

21. The Trustee required the professional services of Agent to act as the Estate's agent to market and sell the Property. By separate application, the Trustee sought approval by the Court to employ the Agent on behalf of the Estate pursuant to the terms of a listing agreement filed therewith (the "Listing Agreement").

22. The Listing Agreement provides for the Agent to receive a commission of six percent (6%) of the sales price of the Property. Based on her experience as a Chapter 7 trustee, the Trustee believes such a commission is within the range of customary and reasonable fees charged and paid in the area for professional brokerage services in

connection with commercial real estate such as the Property. In consideration of the Agent's efforts to market the Property and obtain Buyer's offer to purchase the Property, and consistent with the terms of the Court-approved Listing Agreement, the Trustee seeks authorization from the Court to pay the commission to Agent upon closing of escrow from the Sales Proceeds.

23.    The Trustee is informed and believes that Broker remains disinterested within the meaning of the Bankruptcy Code for purposes of this engagement. As described in the Purchase Agreement, the Broker represents both the Trustee and the Buyer in this transaction. Based on her experience, the Trustee is informed that such dual representation is common in the commercial real estate brokerage community. The dual representations was disclosed to the Trustee and the Buyer. Finally, because the Broker is acting as agent for both buyer and seller in this transaction, the entire six percent (6%) commission will be paid to the Broker, and will not be split with any other parties.

24.    The Trustee believes that Broker has carried and continues to carry out his responsibilities under the Listing Agreement, that the payment of the commission is for reasonable services, necessarily incurred for the benefit of the estate, and that the commission should be paid from escrow pursuant to the Listing Agreement, on a final basis.

**WHEREFORE,** the Trustee respectfully requests the Court enter an order authorizing her to:

1.    sell the Property to the Buyer on the terms and conditions set forth above and in the Purchase Agreement, or alternatively to the successful Qualified Overbidder at the hearing on the Motion on the terms set forth in the Purchase Agreement and subject to any modifications ordered by the Court;

2.    sell the Property free and clear of the Attachment, Lis Pendens and Mechanics Lien, with the liens, interests and encumbrances of the secured creditors in whose favor the Attachment, Lis Pendens and Mechanics Lien are filed attaching to the Net Sales Proceeds as described above;

3.    sell the Property on an "as is" "where is" "with all faults" basis, with no

representations or warranties, express or implied, with respect to the Property;

4. pay the commission to Agent required under the Listing Agreement approved by separate motion upon the closing of the sale of the Property;

5. pay the reasonable and necessary costs and expenses of closing through escrow, including the Estate's pro-rata share of real property taxes and assessments secured against the Property and the amount of all delinquent taxes secured against the Property, upon the closing of the sale from the Sale Proceeds thereof; and

6. sign any and all documents that may be appropriate and/or necessary to consummate the sale.

Dated: February 11, 2014

HEFNER, STARK & MAROIS, LLP

By  *Howard S. Nevins*
Howard S. Nevins, Attorneys for
KIMBERLY J. HUSTED, Chapter 7 Trustee